valid to give a lien or equitable charge upon the property in the hands of the assignee, fit to be enforced in the present suit.

In respect to the other point, suggested at the bar, whether the duties, paid by Messrs. Read & Co. upon the importation of the goods, are to be allowed for and deducted from the value thereof, or of the proceeds in the hands of the assignee, there does not seem to be any ground for the deduction; at least not, unless in respect to such goods, if any, as came into the assignee's hands charged with those duties, since the bankruptcy. The goods previously imported by Messrs. Read & Co., and the proceeds thereof, were to be chargeable with the advances; and it seems to me, that the intention of the parties was, that Messrs. Read & Co. should exclusively bear all the charges of their own importation under the agreement, the duties, as well as the freight and other charges.

These, I believe, are all the points, which it is necessary to notice in deciding the present case. A decree will be entered accordingly for the plaintiffs; and, if necessary, it will be referred to a master to ascertain the amount due to the plaintiffs, and the amount of the property or its proceeds now in the hands of the assignee, which is affected by the equitable lien or charge, growing out of the agreement.

## Case No. 4,865.
### FLETCHER v. PECK.

## Case No. 4,866.
### FLETCHER v. SELDEN.
[16 Blatchf. 468; 4 Ban. & A. 394; 25 Int. Rev. Rec. 249.] [1]

Circuit Court, D. Connecticut. July 9, 1879.

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted in 4 Ban. & A. 394; and here republished by permission.]

Treadwell Cleveland, for plaintiff.
Calvin G. Child, for defendant.

SHIPMAN, District Judge. This is a bill in equity which is based upon the alleged infringement of letters patent [No. 91,108] which were issued to the plaintiff [Addison C. Fletcher] on June 8th, 1869, for an improved government revenue stamp. The defendant [Joseph Selden] is a collector of internal revenue in the state of Connecticut, and, as such collector, under the authority and by direction of the commissioner of internal revenue, sold and used, prior to the date of the bill, the tax-paid spirits stamps, the rectified spirits stamps and the wholesale liquor dealers' stamps which the commissioner has directed shall be used. The three classes of stamps are made in the same way. The plaintiff's invention is described in the specification of his patent, as follows: "My invention consists in providing the stamp with a flap or flaps covering a portion of its face, and arranging the vignette, design, or printed matter on said stamp to extend over the flap or flaps and remaining or uncovered portion of said face or body of the stamp. By this application of my invention, as applied to an adhesive stamp, whether for internal revenue or other purposes, said stamp may be cancelled by tearing off the flap or flaps, which, if necessary, may be preserved as evidence of the cancellation; or, where not required to

[Drawings of patent No. 91,108, published from the records of the United States patent office.]

be preserved, the flap or flaps may either be torn off and thrown away, or be so mutilated by the act of cancelling, as heretofore practised on postage stamps, (which, and other adhesive stamps, my invention is equally applicable to,) as that it will be impossible to use the same stamp over again without detection of the fraud. Referring to the drawing, a is the main body of an internal revenue stamp, of the paper ordinarily used, having mucilage or other adhesive matter on its back, and having secured to its face, for a portion of its length or area, an outer piece of tissue or other thin paper or flap, b, which is loose from the main body, excepting where joined to it,